Order Entered.

Patrick M. Flatley
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

In re:                                          )
                                                )
TERRENCE E. COMBS and                           )
CHRISTINA D. COMBS,                             )   Case No. 18-bk-396
                                                )
         Debtors.                               )   Chapter 13
                                                )

## MEMORANDUM OPINION

Pending before the court is a dispute over whether Terrence and Christina Combs (the "Debtors") are eligible to be debtors in bankruptcy.  On April 25, 2018, they voluntarily dismissed a previous case (Case No. 17-bk-1148) and filed this case on April 30, 2018.  With the new filing, the Debtors seek the extension of the automatic stay under § 362(c)(3)(B) of the Bankruptcy Code.  FNB Bank, Inc., the Debtors' mortgagee, opposes the extension of the automatic stay and seeks the dismissal of this case under §109(g)(2) of the Bankruptcy Code.[1]

For the reasons stated herein, the court will enter a separate order granting FNB's motion to dismiss and denying the Debtors' motion to extend the automatic stay.

## I.  BACKGROUND

The Debtors first sought bankruptcy relief on November 21, 2017.  With their Chapter 13 voluntary petition, the Debtors filed a variety of schedules and other forms.  On Schedule A/B, the Debtors disclosed, among other things, their joint interest in their residence located at 65 Combs Court, Purgitsville, WV, and an interest in a retirement account valued at $10,000.  On Schedule D, the Debtors noted FNB's security interest in their residence.  Schedule D reflects that the Debtors possess equity in their residence beyond FNB's deed of trust, which they value at $94,029.  The Debtors also asked the court for relief from its General Order 06-02 so that they may remit

---

[1] Although not specifically addressed by the parties, the court notes that a finding of debtor ineligibility under § 109(g)(2) moots the Debtors' request to extend the automatic stay.  Aside from the likely dismissal in that event, the automatic stay does not arise in a case in which debtors are ineligible under § 109(g).  11 U.S.C. § 362(b)(21).

1

payments directly to the Chapter 13 trustee instead of being subject to wage withholding. On November 27, 2017, the court granted their request and ordered the Debtors to make the required payments directly to the trustee at P.O. Box 2207, Memphis, TN 38101-2207. The bankruptcy clerk's office mailed a copy of the court's order to the Debtors and did not received returned mail in that regard.

In their proposed Chapter 13 plan that they filed with their petition and schedules, the Debtors proposed to cure a pre-petition arrearage to FNB and maintain their regular contractual payments. On January 12, 2018, FNB objected to the Debtors' proposed plan. Among other things, FNB asserted that the balance due and owing to it included four missed payments for August through November 2017, when the Debtors filed their petition for relief under Chapter 13. FNB also contended that the Debtors lacked sufficient disposable income to propose a feasible plan. The court first held a confirmation hearing in the case on February 9, 2018. At that time, FNB asserted that the bankruptcy stopped a scheduled foreclosure and reiterated its doubts regarding feasibility of the Debtors' proposed plan. The chapter 13 trustee noted that the Debtors had not yet made a plan payment, two of which were due at that point. The court continued the confirmation hearing as is customary when the court holds a confirmation hearing before the deadline for the filing of proofs of claim. The court's order in that regard required the Debtors to make their regular monthly payment to the Chapter 13 trustee to demonstrate their good faith and commitment to their Chapter 13 plan. The bankruptcy clerk's office mailed the court's order to the Debtors at their residence, and the order was not returned as undeliverable.

On February 16, 2018, the Chapter 13 trustee moved to dismiss the Debtors' case for failure to maintain plan payments, and FNB filed a motion for relief from the automatic stay under § 362(d) of the Bankruptcy Code. The trustee asserted in her motion to dismiss that the Debtors were required to commence payments to her on or before December 21, 2017, and that they failed to remit any payments as of the filing of her motion. The court set the trustee's motion to dismiss for hearing in conjunction with the continued confirmation hearing. Regarding FNB's motion for relief from the automatic stay, it stated in support that the Debtors failed to remit three additional monthly payments due postpetition—for December 2017 through February 2018. According to FNB in its motion, the total pre- and post-petition arrearage as of February 17, 2018, was more than $5,817.

On February 20, 2018, the bankruptcy clerk's office sent notice of FNB's motion to the

Debtors at their residence and to their counsel electronically. The notice provided for fourteen days in which they could object to FMB's motion. Notably, the court never received the notice to the Debtors returned as undeliverable, but the Debtors failed to respond to FNB's motion. The Chapter 13 trustee responded, however, and noted that the Debtors' proposed plan proposed that she make the on-going payments to FNB, which she was unable to do based upon the Debtors' failure to remit plan payments. On March 7, 2018, the court entered its order granting FNB relief from the automatic stay.

On April 6, 2018, the court held a hearing in Martinsburg to consider the Chapter 13 trustee's motion to dismiss the Debtors' case and the status thereof in light of FNB obtaining relief from the automatic stay. At that time, FNB withdrew its objection to confirmation based upon obtaining stay relief, and Debtors' counsel indicated a need to amend the Debtors' proposed Chapter 13 plan based upon the relief to FNB. The Chapter 13 trustee noted the continued failure of the Debtors to remit plan payments to her office but agreed to await the filing of an amended Chapter 13 plan. The court, therefore, ordered the Debtors to amend their proposed plan by April 30, 2018, and scheduled a confirmation hearing regarding the anticipated amended plan for June 8, 2018. Subsequently, however, the Debtors retained new counsel, who moved to voluntarily dismiss the Debtors' first case. On April 30, 2018, the Debtors filed their new Chapter 13 petition.

On May 4, 2018, the court held a hearing in Martinsburg to consider the Debtors' request to extend the automatic stay and FNB's request to dismiss this case under §109(g)(2). After hearing testimony from Mrs. Combs and receiving argument from the parties, the court ordered the parties to supplement the record by May 8, 2018, regarding the application of § 109(g)(2). On that date, the parties timely supplemented the record, and the matter is ripe for adjudication.

## II. ANALYSIS

The Debtors seek the extension of the automatic stay in this case under § 362(c)(3)(B). In that regard, the Debtors assert that they filed this case in good faith despite the presumption under § 362(c)(3)(C)(ii) against such a finding.[2] According to the Debtors' motion to extend the automatic stay, the goal of this case is to allow the Debtors to cure the arrearage to FNB and otherwise reorganize their financial life. They concede, however, that they dismissed their

---

[2] Under § 362(c)(3)(C)(ii), a presumption against the Debtors having filed the second case in good faith arises, at least as to FNB, because it commenced an action for relief from the automatic stay under § 362(d) in the prior case and was granted relief in that regard.

3

previous case voluntarily based upon relief from the automatic stay granted to FNB.

FNB contends that the record does not support a finding that the Debtors filed this case in good faith so as to obtain an extension of the automatic stay. What is more, FNB asserts that the Debtors are ineligible for bankruptcy relief based upon the operation of §109(g)(2). Specifically, FNB takes the position that the Debtors fail to establish eligibility under any standard employed by courts in analyzing § 109(g)(2) of the Bankruptcy Code.

Section 109(g) explicitly provides that "no individual . . . may be a debtor under [title 11] who has been a debtor in a case pending under [title 11] . . . within the preceding 180 days if . . . (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief [under § 362 of title 11]." 11 U.S.C. § 109(g). As the parties note in their respective supplemental filings, courts are split regarding the interpretation of § 109(g)(2). As one court noted, "there are essentially two main divisions in the interpretative approach: (1) cases that find the strict interpretation is mandatory; and (2) those that allow for an exception to strict interpretation." *In re Richter*, No. 10-01260, 2010 WL 4272915, at *2 (Bankr. N.D. Iowa Oct. 22, 2010). Those courts that permit an exception to the strict interpretation of §109(g)(2) likewise have varying approaches. *Id*. at 2-3 (discussing the "equitable-discretionary," "causal connection," and "pending motion" approaches).

The courts employing the strict interpretation of § 109(g)(2) apply the statute according to its plain meaning, which they find to be plain and unambiguous dictating "a broad rule of dismissal." *In re Sole*, 233 B.R. 347, 349 (Bankr. E.D. Va. 1998). As one court noted in that regard, "there is no basis, either in the test itself or in the legislative history, for requiring that the creditor establish a causal connection between the request for relief and the voluntary dismissal." *Chrysler Fin. Corp. v. Dickerson (In re Dickerson)*, 209 B.R. 703, 706 (W.D. Tenn. 1997). Courts critical of the strict interpretation of § 109(g)(2) note that a debtor may voluntarily dismiss a case for reasons other than a creditor's request for stay relief, in which instance debtor abuse is not present. *See In re Hutchins*, 303 B.R. 503, 508-09 (Bankr. N.D. Ala. 2003) (illustrating examples where a debtor's voluntarily dismissal may not be abusive). They hold that even if §109(g)(2) contains plain and unambiguous language, interpreting it uniformly may lead to an absurd result, *id*. at 509, which justifies interpreting it outside its literal terms. *See In re Howard*, 311 B.R. 230, 231 (Bankr. E.D. Wis. 2004) (recognizing the appropriate canon of statutory construction regarding statutes leading to absurd results).

Some courts rejecting the strict interpretation of §109(g)(2) employ an equitable approach to determining a debtor's eligibility under § 109(g)(2). In essence, they consider the totality of the circumstances and balance the equities. *See In re Brown*, 534 B.R. 673, 676 (Bankr. E.D. Va. 2015); *Hutchins*, 303 B.R. at 509 ("Thus, this court will look at the facts of this case to determine if the results are absurd if [§ 109(g)(2)] is strictly applied."). For example, in *In re Luna*, which the Debtors cite in support here, the debtor's mortgagee obtained relief from the automatic stay, but the court ordered that the mortgagee could not publicize a foreclosure sale until it provided the debtor with an accounting of the amounts necessary to reinstate and pay off the loan secured by the debtor's residence. 122 B.R. 575, 576 (B.A.P. 9th Cir. 1991). Shortly after the court granted stay relief, the debtor voluntarily dismiss her case. *Id.* After the mortgagee willfully violated the automatic stay in the debtor's subsequent case, the mortgagee filed a motion to dismiss the case under §109(g)(2), which the bankruptcy court denied. *Id.* at 577. As the bankruptcy appellate panel noted there, "[m]echanical application of [§] 109(g)(2) would reward [the mortgagee] for acting in bad faith and punish [the debtor] for acting in good faith." *Id.*; *see also In re Beal*, 347 B.R. 87, 93 (E.D. Wis. 2006) (employing the equitable approach to affirm the bankruptcy court's denial of a motion to dismiss a subsequent case when the debtor successfully defended against a request for stay relief in the preceding case before voluntarily dismissing it).

Finally, other courts adopt an approach "requir[ing] a causal relationship between the voluntary dismissal of the previous case and the motion for relief from stay the creditor had filed in that case." *Richter*, 2010 WL 4272915, at *3. As one court noted, "[t]his interpretation seems the most obvious and natural meaning when one considers that Congress' intent in adding [§] 109(g) to the Bankruptcy Code was to remedy the abusive practice of serial bankruptcy filings." *First Nat'l Bank of Rocky Mount v. Duncan (In re Duncan)*, 182 B.R. 156, 159 (Bankr. W.D. Va. 1995).

Based upon this court's survey of the legal authority, it finds that the "causal connection" approach is the best lens through which to examine eligibility under §109(g)(2). In that regard, the court notes that sister bankruptcy courts within the Fourth Circuit have adopted either a strict interpretation or "causal connection" analysis of § 109(g)(2) approach. *See In re Tune*, 361 B.R. 466, 467 (Bankr. E.D.N.C. 2007) (citing *In re Farnsworth*, Case No. 04-01870-5-ATS, slip op. at 2 (Bankr. E.D.N.C. Aug. 5, 2004) wherein Judge Small noted the strict interpretation applied in that district); *Sole*, 233 B.R. at 350 (adopting the "causal connection" approach); *Duncan*, 182

B.R. at 159 ("Absent a causal relationship, there is no abuse to curb and no purpose to be served by keeping the former debtor out [of] bankruptcy for 180 days."); *In re Keziah*, 46 B.R. 551, 554 (Bankr. W.D.N.C. 1985) (employing the strict interpretation of § 109(g)(2)).

Additionally, the court finds it likely that the Fourth Circuit would adopt such an approach. *See Tidewater Finance Co. v. Williams (In re Williams)*, 498 F.3d 249, 259 (4th Cir. 2007) (stating with approval a "causal connection" analysis of § 109(g)(2)). Notably, the court in *Williams* was not specifically analyzing the application of §109(g)(2). Nonetheless, it noted in discussing tools to deal with debtor abuse that "if a debtor sought to dismiss a Chapter 13 action in order to avoid the bankruptcy court's judgment on [relief under § 362], such dismissal would bar the debtor from filing another bankruptcy petition for 180 days." *Id.*

Moreover, the court finds that the "causal connection" approach best enforces Congress's intent to curb debtor abuse with § 109(g)(2). *See* S. Rep. No. 65, 98th Cong. 1st Sess. 74 (1983) ("The purpose of [§ 109(g)] is to provide the court with greater authority to control abusive multiple filings."); *In re McAlister*, No. C/A 1-6647-W, 2001 WL 1806037, at *5 (Bankr. D.S.C. Aug. 13, 2001) (finding in a case somewhat analogous to the one at bar that "[i]t is exactly this thwarting of a creditor's rights that § 109(g)(2) intends to prevent"). As the courts employing the equitable approach point out, the strict interpretation of § 109(g)(2) can lead to absurd results in certain circumstances. Determining debtor eligibility based upon causation between a creditor's motion for stay relief and a debtor's voluntarily dismissal of the case seeks to avoid those absurd results while still honoring the spirit of the statute.

Applying the "causal connection" analysis here leads to the inexorable conclusion that the Debtors are ineligible for relief in the extant case. Notwithstanding allegations the Debtors made against their former counsel, there is no doubt that they dismissed their prior case based upon the court granting FNB relief from the automatic stay; they admitted as much in their motion to extend the automatic stay in this case, and Mrs. Combs testified to that effect during the hearing on the same.[3] Moreover, the Debtors filed each of their bankruptcy cases to thwart FNB's collection

---

[3] Mrs. Combs also testified that the court granted stay relief to FNB without the Debtors' knowledge or consent and that counsel failed to advise them of the motion or otherwise respond to the motion. Although circumstances in that regard may have been relevant to the court's consideration of a motion to reconsider the order granting stay relief, it is not relevant to the court's application of the "causal connection" approach to determine eligibility under § 109(g)(2). The fact of the matter is that the Debtors abandoned their first case and filed their

efforts via scheduled foreclosures. Despite the Debtor's testimony regarding their ability to repay FNB and otherwise complete a Chapter 13 plan, their past performance does not support such a finding. The Debtors went from August 2017 to at least February 2018 and likely to the present, without making a monthly mortgage payment to FNB, and they remitted no payments to the Chapter 13 trustee in their first case. The court views the successive filings here as exactly the type of conduct § 109(g)(2) is meant to prevent.

### III. CONCLUSION

Based upon the foregoing, the court finds that the Debtors are ineligible to be debtors in bankruptcy. The court will therefore enter a separate order granting FNB's motion to dismiss, denying as moot the Debtors' motion to extend the automatic stay, and barring the Debtors from refiling for 180 days from the dismissal of this case.

---

second case in an effort to escape the consequences of the stay relief granted in their first case.